**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RONALD DIGGS,

                        Plaintiff,

    - v -                                      Civ. No. 9:16-CV-554
                                                          (DNH/DJS)

SGT. RONALD G. WOOD; SGT. JUSTIN DELISLE;
KRISTEN J. DELISLE; CHRIS DUBREY; and
T. ROBARE,

                        Defendants.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

RONALD DIGGS
Plaintiff, *Pro Se*
04-R-3906
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021

HON. BARBARA D. UNDERWOOD          RYAN L. ABEL, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

    *Pro se* Plaintiff Ronald Diggs brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his First and Eighth Amendment rights in 2013 while he was an inmate at Clinton Correctional Facility. Dkt. No. 1, Compl. Defendants Justin

Delisle and Kristen Delisle have now filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(a). Dkt. No. 47. Plaintiff opposes the Motion, Dkt. Nos. 58, 62, 66 & 67, and Defendants filed a Reply. Dkt. No. 64. For the reasons that follow, the Court recommends **granting** Defendants' Motion for Summary Judgment.

## I. BACKGROUND[1]

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision and was incarcerated at Clinton during all times relevant to this action. *See generally* Compl.[2] Defendant Kristen Delisle is employed at Clinton Correctional Facility as a Senior Librarian. Dkt. No. 47-2, Declaration of Kristen J. Delisle ("Delisle Decl.") at ¶ 1. Her husband, Defendant Justin Delisle, is a Sergeant at Clinton. *Id.* at ¶ 3.

In February 2011, Plaintiff filed an inmate grievance regarding facility library call-out procedures. Delisle Decl. at ¶ 23. Defendant Kristen Delisle provided a response regarding this grievance. *Id.* at ¶ 24. Between that time and August 2012, Plaintiff continued to request library call-outs and was placed on the call-out list at least sixty times. *Id.* at ¶ 27;

---

[1] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id*. Plaintiff has not filed a fully responsive Rule 7.1 Statement, but makes numerous factual assertions contradicting the facts set forth by Defendants in his various submissions. In deference to Plaintiff's *pro se* status the Court has opted to review the entire summary judgment record in order to ascertain the undisputed material facts. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

[2] Page citations to Plaintiff's Complaint are to page numbers generated by the Court's CM/ECF system.

Declaration of Melissa Latino ("Latino Decl.") at Ex. C. Plaintiff filed a second grievance regarding Library call-outs in August 2012. Latino Decl. at Ex. A; Delisle Decl. at ¶ 6. Defendant Kristen Delisle again responded to the grievance. Delisle Decl. at ¶ 7. Following this grievance, Plaintiff continued to request library call-outs and received approximately thirty call-outs between August 2012 and May 2013. *Id.* at ¶ 14; Latino Decl. at Ex. C. Plaintiff filed no other grievances at Clinton Correctional Facility regarding the facility library between August 2012 and May 2013. Declaration of Christine Gregory ("Gregory Decl.") at ¶ 18 & Ex. A; Compl. at p. 8 (noting that Plaintiff filed two library grievances).

On May 17, 2013, Ms. Delisle spoke with Plaintiff about him having written her full name on correspondence to the library. Compl. at pp. 6-7; Delisle Decl. at ¶ 35. She advised Plaintiff not to do so in the future. Delisle Decl. at ¶ 35. Plaintiff alleges that three facility security staff were present for this discussion, none of whom are defendants in this action. Compl. at p. 8. Defendant contends that security staff were present pursuant to their normal duties. Delisle Decl. at ¶¶ 37-38.

Plaintiff alleges that on May 23, 2013 he was assaulted by three staff members at Clinton Correctional Facility.[3] Compl. at pp. 14-17. He alleges that earlier that day a number of correctional staff, including Defendant Justin Delisle, came to his cell and conducted a search. Compl. at p. 12; Dkt. No. 62 at p. 7. Plaintiff's Complaint alleges that he was told the search concerned an investigation regarding unauthorized legal work being done on

---

[3] The three are Defendants in this action, but have not moved for summary judgment.

behalf of other inmates. Compl. at p. 17. Plaintiff claims to have known this to be untrue. *Id*. He instead contends that the search was done for the purposes of attempting to match his handwriting to a letter, allegedly of a sexual nature, to Kristen Delisle. Dkt. No. 62 at pp. 7-8. Plaintiff denies having written such a letter. Dkt. No. 67 at p. 21. Kristen Delisle denies having received one. Delisle Decl. at ¶¶ 48-49. According to the Complaint, Sgt. Delisle left Plaintiff's cell that day having found that Plaintiff's handwriting "didn't match" the sample to which it was being compared. Compl. at p. 18. Plaintiff contends that later that night he was moved from his cell and physically assaulted. *Id*. at pp. 14-17. There is no allegation that either of the Defendants now seeking summary judgment were present for that assault. *Id*.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56(c); *see also Scott v. Coughlin*, 344

F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord, Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

### A. Eighth Amendment Claims

Plaintiff alleges that Defendants Kristen and Justin Delisle violated his Eighth Amendment rights by subjecting him to a risk of harm when they instigated and/or orchestrated an assault on Plaintiff by other correctional staff. Dkt. No. 10 at p. 14. Kristen Delisle denies she had any role in seeking to have Plaintiff attacked, denies she had any reason for doing so, and contends that Plaintiff's allegations to the contrary are completely conclusory. Dkt. No. 47-4, Defs.' Mem. of Law at pp. 9-12. Sgt. Delisle seeks summary judgment on the ground that Plaintiff's allegations in the Complaint are too conclusory to support this claim. *Id.* at pp. 12-13.

"Prison officials . . . must 'take reasonable measures to guarantee the safety of the inmates.'" *Justice v. Hulihan*, 2013 WL 5506326, at *2 (N.D.N.Y. Oct. 4, 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "This includes a duty to protect inmates from harm threatened by other officers." *Bridgewater v. Taylor*, 832 F. Supp.2d 337, 347 (S.D.N.Y. 2011) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994)). "When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he was incarcerated under conditions posing a

substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight." *Murray v. Goord*, 668 F. Supp. 2d 344, 357 (N.D.N.Y. 2009) (citing cases).

"The standard for failure to protect claims is high," *Walsh v. Goord*, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007), and "conclusory and general allegations . . . are insufficient to survive a motion for summary judgment." *Hannah v. Vanguilder*, 2010 WL 1372385, at *7 (N.D.N.Y. Feb. 11, 2010), *report and recommendation adopted*, 2010 WL 1404276 (N.D.N.Y. Apr. 7, 2010). Here, Plaintiff fails to proffer evidence to satisfy this standard that either Defendant actively or impliedly played any role in the assault alleged by Plaintiff.

The Complaint and Plaintiff's papers opposing this Motion speak in very general, conclusory terms. Plaintiff repeatedly alleges, for example, that Kristen Delisle instigated and incited violence against him. *See, e.g.*, Dkt. No. 62 at ¶¶ 3, 13 & 16-17; Dkt. No. 67 at ¶¶ 2 & 33. He also alleges that she had Plaintiff "jumped and assaulted by her Prison family." Dkt. No. 62 at ¶ 5. Plaintiff elsewhere refers to Kristen Delisle as a "fire-starter," Dkt. No. 62 at ¶ 17, and a "goader." Dkt. No. 67 at ¶ 2. None of these comments, however, is accompanied by "admissible proof connecting any statements by the Defendant . . . to that attack." *White v. Williams*, 2016 WL 4006461, at *15 (N.D.N.Y. June 22, 2016), *report and recommendation adopted*, 2016 WL 4005849 (N.D.N.Y. July 25, 2016). Plaintiff clearly attempts to connect the incident between Plaintiff and Ms. Delisle on May 17th with the

alleged assault on May 23rd, but the correctional officers present on May 17th are not the same as those who allegedly attacked Plaintiff on May 23rd, *see* Compl. at pp. 8 & 15, and so no connection between the two is readily apparent on this record.

Other assertions in Plaintiff's papers also fail to overcome the conclusory nature of Plaintiff's allegations when taken as a whole. Plaintiff, for example, contends that Defendants "specifically said the Defendant's name, or referred to her title as the Librarian" when assaulting him. Dkt. No. 62 at ¶ 26. Accepting this as true, such comments would perhaps speak to the motivations of those Defendants, but do nothing to establish a nexus between their actions and Ms. Delisle. Plaintiff does not allege that they attribute the assault to her or that they were acting at the direction of either her or Sgt. Delisle.

Plaintiff also references an incident some time after the assault when he returned to the facility library for the first time. He contends that Ms. Delisle was clearly scared and surprised to see him back at the library, had numerous conversations with correctional staff, and sought out "protection" from security staff who she had sit next to her while Plaintiff was present. Dkt. No. 66 at pp. 30-35. This, he contends, was evidence of her guilty conscience. He further contends that when inmates were told to leave the library on this occasion he was singled out by corrections staff and told to stand against the wall. *Id.* He cites no specific admissible evidence regarding this incident, however, to defeat summary judgment. He offers nothing more than his own conjecture as to what Ms. Delisle was feeling, why she was having conversations with staff, or to the substance of those conversations. That Ms. Delisle

was conversing with correctional staff is, of itself, hardly remarkable given the nature of the workplace. When recounting that he was placed on the wall when leaving the library, he does not state that anyone made any comment related to the assault during this episode or state what he was told about why this had occurred. Taken as a whole, such conclusory allegations simply are insufficient to raise a triable question of fact about Ms. Delisle role in the alleged assault.

Kristen Delisle states that she first became aware of the alleged assault when Plaintiff filed a grievance more than one month after it occurred. Delisle Decl. at ¶ 52. She denies any role in that incident. *Id.* at ¶ 53. Beyond his conclusory allegations to the contrary, Plaintiff has offered no evidence to suggest that Ms. Delisle knew Plaintiff was in danger of being harmed or that she was indifferent to that risk. Without such evidence, summary judgment is appropriate. *Murray v. Goord*, 668 F. Supp. 2d at 357-59.

Similarly, the allegations related to Sgt. Delisle fail to rise above an entirely conclusory level. His opposition papers assert, for example, that Sgt. Delisle "made it clear that his involvement was personal based off-of him just being the Defendant's husband." Dkt. No. 62 at p. 11. How it is that this was made clear is never explained by Plaintiff. No direct comment indicating as much is ever attributed to Sgt. Delisle. Sgt. Delisle is also alleged to have threatened Plaintiff, but the specifics of that threat are not pled. *Id.* at p. 12. In opposing the Motion, Plaintiff primarily contends that he was assaulted because he was identified as the author of a sexual letter written to Kristen Delisle. *See* Compl. at p. 17.

This is insufficient to defeat summary judgment for several reasons. First, there is no evidence in the record to establish that any such letter existed. Plaintiff denies having written such a letter. Dkt. No. 67 at p. 21. Kristen Delisle specifically denies having ever received a letter of this sort. Delisle Decl. at ¶¶ 45-49. Even if such a letter existed, Plaintiff's own submissions give no reason to believe that Sgt. Delisle would have any reason to connect Plaintiff to it. Plaintiff alleges that Sgt. Delisle conducted a cell search seeking to match Plaintiff's handwriting to the alleged letter, but that Delisle specifically concluded that Plaintiff's handwriting did not match. Compl. at p. 12. Why it is that in light of such evidence, Sgt. Delisle would nonetheless have believed Plaintiff was responsible for the letter is unexplained by Plaintiff.

Second, there is no specific allegation, even a conclusory one, that ties Sgt. Delisle to the alleged assault. He is not alleged to have been present. There is no claim, other than purely conclusory assertions, anywhere in Plaintiff's extensive filings opposing the Motion that any of those alleged to have been involved in the assault said that Sgt. Delisle had directed, encouraged, or was otherwise involved in the assault.

For the reasons set forth above, the Court finds that Plaintiff's Eighth Amendment claims cannot withstand summary judgment.

### B. First Amendment Claim

The Complaint also alleges that Defendant Kristen Delisle retaliated against Plaintiff after he filed two grievances against her by denying him law library call-outs and instigating

Sgt. Delisle to have other corrections officers attack Plaintiff.

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action'." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir.2009)). The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). The Second Circuit has warned that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)). This is true because retaliation claims are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d at 491.

Plaintiff filed a grievance regarding library call out procedures in February 2011. Gregory Decl. at ¶ 14; Delisle Decl. at ¶¶ 23-24. He filed a second grievance regarding those procedures in August 2012. Gregory Decl. at ¶ 15; Delisle Decl. at ¶ 6. The filing of grievances is recognized as protected activity and so Plaintiff has sufficiently alleged the first element of his retaliation claim. *Vega v. Artus*, 610 F. Supp. 2d 185, 206 (N.D.N.Y. 2009); Defs.' Mem. of Law at pp. 5-6 (conceding filing of a grievance is protected activity).

Plaintiff alleges two distinct adverse actions - the refusal to place him on the library call-out list and Kristen Delisle's alleged role in an assault on him. The record fails to bare out Plaintiff's claim in this regard. The record establishes that between January and early August of 2012, a time period after Plaintiff's first grievance, he was on the Clinton library call-out list over sixty times. Latino Decl., Ex. C. From mid-August 2012 through June 2013, a time following Plaintiff's second grievance, he was on the call-out list approximately thirty times. *Id.* On this record, Plaintiff simply cannot show that any adverse action was taken with respect to the library call-outs. Defendant, therefore, is entitled to summary judgment on this aspect of Plaintiff's retaliation claim.

Nor can Plaintiff establish that Kristen Delisle took an adverse action regarding the alleged assault. A retaliation claim must be "supported by specific and detailed factual allegations." *Friedl v. City of New York*, 210 F.3d 79, 86 (2d Cir. 2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)). As outlined in Point III(A) *supra*, Plaintiff has failed to offer anything, beyond purely conclusory allegations that Kristen Delisle had any role in the assault Plaintiff alleges. For this reason, Plaintiff cannot establish that this was an adverse action for purposes of his retaliation claim.

Additionally, summary judgment is appropriate because Plaintiff cannot establish any casual connection between his protected activity and the allegedly adverse actions. Casual connection requires Plaintiff to prove that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d at 79. To establish such a connection courts consider: (1) the temporal proximity between the protected

activity and the alleged retaliatory act; (2) the prisoner's prior good disciplinary record; (3) the prisoner's vindication at his disciplinary hearing; and (4) the defendant's statements regarding their motive. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (1995).

Defendant expressly denies any role in the alleged assault. Delisle Decl. at ¶¶ 52-53. The record contains no evidence regarding either the second or third considerations identified in *Colon*, leaving just temporal proximity. Temporal proximity between the protected activity and the retaliatory conduct may be suggestive of a casual connection. *Rivera v. Lawrence*, 2009 WL 1734735, at *4 (N.D.N.Y. June 18, 2009). But, "[r]elying solely on temporal proximity . . . is insufficient to support a claim of retaliation." *Pierrot v. Hahn*, 2017 WL 4221117, at *8 (N.D.N.Y. July 28, 2017), *report and recommendation adopted*, 2017 WL 4221072 (N.D.N.Y. Sept. 21, 2017).

Here, temporal proximity strongly points away from any casual connection. There is no close proximity in time between the protected activity of filing a grievance in February 2011 and the alleged assault in May 2013. "[I]t is the rare case that finds an issue of fact as to causation when more than a year rather than months have gone by." *Thomas v. City of New York*, 953 F. Supp. 2d 444, 459 (E.D.N.Y. 2013); *see also Spavone v. Fischer*, 2012 WL 360289, at *5 (S.D.N.Y. Feb. 3, 2012) (no casual connection where fifteen months had elapsed between protected activity and adverse action). Given the absence of any other admissible evidence supporting Plaintiff's retaliation claim, this is not one of those rare cases.

Though closer in time, the August 2012 grievance was still nine months prior to the

alleged assault and too attenuated to offer a basis for finding a temporal connection. *White v. Eastman Kodak*, 2009 WL 1514659, at *10 (W.D.N.Y. May 29, 2009) ("The Court determines that in the absence of any other evidence, [nine months] is simply too long a period of time to show temporal proximity."); *Uddin v. City of New York*, 427 F. Supp. 2d 414, 434 (S.D.N.Y. 2006) ("actions that took place more than nine months after the last alleged protected activity . . . are too remote to establish a causal connection."); *Crawford v. Braun*, 2001 WL 127306, at *6 (S.D.N.Y. Feb. 9, 2001) (seven months too attenuated).

Plaintiff also attempts to rely on his May 17th encounter with Kristen Delisle "which immediately after lead up to Plaintiff being [a]ssaulted and [j]umped days later," Dkt. No. 62 at ¶ 23, to support his retaliation claim. This reliance is misplaced.

First, Plaintiff clearly cannot demonstrate that the events of May 17th are an independent act for which Delisle would have retaliated against Plaintiff. Plaintiff has made no allegation that he engaged in any protected activity during this encounter that could serve as the basis of a retaliation claim. Nor is there any claim of an adverse action. The parties agree that during this encounter Delisle only told Plaintiff not to write her full name on correspondence to the library. Compl. at pp. 6-7; Delisle Decl. at ¶ 35. Such a statement is not one "that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003)).

Second, nothing connects this event to the alleged assault. While it is closer in time than the grievances at issue, as discussed above, no threat of an assault was made during this

incident. The correctional staff present during that episode are not alleged to have been involved in assaulting Plaintiff and are not Defendants in this action. This incident, therefore, cannot form part of Plaintiff's retaliation claim.

Similarly, Plaintiff also references the letter of a sexual nature allegedly received by Kristen Delisle as a basis for both her actions. To the extent he contends this formed the basis for retaliation against him, his claim must be dismissed because Plaintiff expressly denies having written the letter and, therefore, cannot attempt to argue that it was somehow a protected activity. Nor could the letter be a motivating factor for any actions taken by Defendant since she denies having received any such letter. Delisle Decl. at ¶¶ 45-49.

For these reasons Plaintiff's retaliation claim should also be dismissed because Plaintiff fails to establish either an adverse action or the requisite casual connection to establish either claim.

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 47) be **GRANTED** and this case be dismissed as to Defendants Kristen Delisle and Justin Delisle; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[4] within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: August 16, 2018
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).